IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 03-cv-02453-ZLW-CBS

KEITH LANCE,
CARL MILLER,
RENEE NELSON,
NANCY O'CONNOR

       Plaintiffs,

v.

DONETTA DAVIDSON, SECRETARY OF STATE FOR
THE STATE OF COLORADO, in her Official Capacity Only,

       Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Before **EBEL**, Circuit Judge of the United States Court of Appeals for the Tenth Circuit, **PORFILIO**, Senior Circuit Judge of the United States Court of Appeals for the Tenth Circuit, and **WEINSHIENK**, Senior District Judge of the United States District Court for the District of Colorado.

---

**EBEL**, Circuit Judge.

---

      This action, which we hear pursuant to 28 U.S.C. § 2284, is part of the ongoing litigation over federal election districts created by the Colorado courts in the wake of the 2000 census.  Specifically, Plaintiffs assert that Article V, § 44, of the Colorado Constitution, as it has been interpreted by the Colorado Supreme Court in <u>People ex rel. Salazar v. Davidson</u>, 79 P.3d 1221 (Colo. 2003), violates

(1) the Elections Clause, which vests in the state legislatures the authority to determine the manner in which congressional representatives are selected, U.S. Const. art. I, § 4; and (2) the Petition Clause, which guarantees the right to petition the government for redress of grievances, U.S. Const. amends. I, XIV.

Given the long history of previous litigation in this case, our scheduling order directed Defendant to address only jurisdictional and preclusion issues in the initial motion to dismiss.  Defendant filed such a motion, asking us to dismiss the case on the basis of Rooker-Feldman[1] and issue preclusion, which we heard on June 20, 2005.  In an oral ruling, we granted Defendant's motion to dismiss as to Plaintiffs' Elections Clause claim on the basis of Rooker-Feldman but denied the motion to dismiss as to Plaintiffs' Petition Clause claim.  At the conclusion of the hearing, we accepted for filing Defendant's oral motion to dismiss Plaintiffs' Petition Clause claim for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  This opinion explains the reasoning behind our previous oral ruling that this court lacks jurisdiction to consider Plaintiffs' claim under the Elections Clause based on Rooker-Feldman but that Plaintiffs' Petition Clause claim is not barred by either Rooker-Feldman or the doctrine of issue preclusion.  However, as to

_____

[1]See Rooker v. Fid. Trust Co., 263 U.S. 413 (1923) (holding that lower federal courts generally lack jurisdiction to consider appeals from state-court judgments); Dist. of Columbia Ct. of App. v. Feldman, 460 U.S. 462 (1983) (same).

Plaintiffs' Petition Clause claim we now grant Defendant's motion to dismiss under Rule 12(b)(6) for failure to state a claim.

## BACKGROUND

After the 2000 census, Congress determined that Colorado would be allotted an additional seat in the House of Representatives, increasing the number of congressional districts in Colorado from six to seven. Keller v. Davidson, 299 F. Supp. 2d 1171, 1174 (D. Colo. 2004). However, the Colorado General Assembly failed to pass a congressional redistricting plan in time for the 2002 elections. Id. After a group of Colorado voters initiated litigation, the Colorado state courts stepped in and drew a congressional district map for the 2002 elections that took into account the new census figures and conformed to federal voting rights requirements. See Avalos v. Davidson, No. 01-CV-2897, 2002 WL 1895406, at *13 (Colo. Dist. Ct. Jan. 25, 2002) (unpublished), aff'd sub nom. Beauprez v. Avalos, 42 P.3d 642 (Colo. 2002).

After the 2002 elections gave Colorado Republicans majorities in both houses of the state legislature, the General Assembly made another attempt at passing a redistricting plan. Keller, 299 F. Supp. 2d at 1174. This time they were successful, and the redistricting legislation was signed into law by Governor Bill Owens on May 9, 2003. An Act Concerning the Congressional Redistricting of

- 3 -

Colorado with Minimal Population Deviation, 2003 Colo. Legis. Serv. ch. 247 (S.B. 03-352) (West).[2]  Colorado now had dueling electoral maps, a situation which spurred three discrete legal proceedings: (1) a state-court suit later removed to this court (Keller); (2) an original proceeding in the Colorado Supreme Court (Salazar); and (3) the instant action brought under 42 U.S.C. § 1983 (Lance).

The first of these cases, Keller, was filed by proponents of the court-approved plan almost immediately after the passage of the legislative plan.  299 F. Supp. 2d at 1174.  The Keller defendants, who were proponents of the legislative plan, asserted a number of counterclaims.  Id. at 1175, 1178-79. Shortly before Keller's removal to this court, then-Colorado Attorney General Ken Salazar filed an original petition in the Colorado Supreme Court, seeking an order prohibiting Secretary of State Donetta Davidson from implementing the legislative redistricting plan and commanding her to use the court plan in the 2004 elections.  See Salazar, 79 P.3d at 1227.

On December 1, 2003, the Colorado Supreme Court handed down its decision in Salazar, holding that Colo. Const. Art. V, § 44 limited redistricting to once per decade, to be completed in the time between the decennial census and

_____

[2]As has been the custom throughout this litigation, we will use the term "legislative plan" to refer to Senate Bill 03-352 and the term "court-approved plan" to refer to the electoral map affirmed in Avalos.

the first election of the decade.  79 P.3d at 1243.  Since the state courts had

adopted a redistricting plan in 2002 after the legislature's efforts had failed, the

Colorado Supreme Court concluded that the legislative plan passed in May 2003

violated the state constitution, and it ordered the secretary of state to employ the

court-approved plan through the 2010 election season.  Id.  Although the Salazar

decision contained a lengthy discussion of federal constitutional law (and

specifically, Article I, § 4 of the Constitution), the court maintained that its

holding was premised on the Colorado Constitution.  Salazar, 79 P.3d at 1242.

With the favorable ruling from the Colorado Supreme Court in hand, the

Keller plaintiffs had little else to litigate, and the focus of the case turned to the

federal constitutional questions asserted in the Keller defendants' original and

amended counterclaims.  We held that Rooker-Feldman deprived the federal

courts of jurisdiction over the Keller defendants' amended counterclaims.  Keller,

299 F. Supp. 2d at 1184.  This was because, inter alia, the amended counterclaims

were filed after the state supreme court's decision in Salazar, and thus were not

parallel.  Id. at 1178-79

As to the original counterclaims, we held that the doctrine of issue

preclusion prevented our consideration of the constitutional question.  Id. at 1183.

This was because we interpreted the state supreme court decision in Salazar as

having decided the same federal constitutional question before our court arising

under the Elections Clause. Id. at 1182. After the United States Supreme Court

denied certiorari in Salazar, we dismissed the Keller suit. Keller v. Davidson, No.

03-Z-1482 (CBS), 2004 WL 2359556, at *1 (D. Colo. Oct. 15, 2004).

This was not, however, the end of the road. Three days after the Colorado

Supreme Court's decision in Salazar (but prior to our dismissal of Keller) a new

group of Plaintiffs who favored the legislative plan filed the instant suit against

Secretary of State Davidson. (Lance v. Davidson).[3] Specifically, Plaintiffs

asserted two constitutional claims in their amended complaint.[4] First, they argued

that Article V, § 44 of the Colorado Constitution, as interpreted in Salazar,

violated Article I, § 4 of the U.S. Constitution by depriving the state legislature of

its responsibility to draw congressional districts (the Elections Clause claim).

Second, Plaintiffs claimed that Colo. Const. Art. V, § 44, as interpreted in

Salazar, deprived them of their right to petition the government for redress of

---

[3]Initially, Attorney General Salazar sought leave to intervene, claiming that the secretary of state would not adequately represent state interests given her previous position as a proponent of the legislative plan in the Salazar case. However, the attorney general withdrew his motion after the secretary of state said that she would uphold the law in force and agreed to let the attorney general's office represent her.

[4]Plaintiffs' original complaint was filed in December 3, 2003 and asserted three constitutional claims. However, on June 14, 2004, we permitted Plaintiffs to amend their complaint because no responsive pleading had been filed. The amended complaint removed a constitutional claim predicated on separation of powers.

grievances under the First and Fourteenth Amendments of the U.S. Constitution (the Petition Clause claim).

On January 3, 2005, Defendant filed a motion to dismiss Plaintiffs' claims on the basis of <u>Rooker-Feldman</u> and issue preclusion. At the hearing on the motion, we ruled from the bench that <u>Rooker-Feldman</u> deprived us of jurisdiction over Plaintiffs' Elections Clause claim. As to Plaintiffs' Petition Clause claim, however, we ruled that we had jurisdiction and that the claim was not barred by the doctrine of issue preclusion. We then accepted for filing an oral motion to dismiss Plaintiffs' Petition Clause claim as a matter of law, pursuant to Fed. R. Civ. P. 12(b)(6).

Therefore, we address three motions before the court, the first two of which have been ruled upon orally: (1) a motion to dismiss the case for lack of jurisdiction under <u>Rooker-Feldman</u>, brought pursuant to Fed. R. Civ. P. 12(b)(1); (2) a motion to dismiss the case on the basis of issue preclusion, brought pursuant to Fed. R. Civ. P. 12(b)(6);[5] and (3) a motion to dismiss Plaintiffs' Petition

---

[5]In contrast to <u>Rooker-Feldman</u>, issue preclusion is not jurisdictional and is instead an affirmative defense asserted after the court already has jurisdiction over a claim. <u>See</u> <u>Pittsburg County Rural Water Dist. No. 7 v. City of McAlester</u>, 358 F.3d 694, 708 n.4 (10th Cir.), <u>cert. denied</u>, 125 S. Ct. 44 (2004). As such, the appropriate vehicle for dismissal on the basis of issue preclusion is Fed. R. Civ. P. 12(b)(6). <u>See</u> <u>Conopco, Inc. v. Roll Int'l</u>, 231 F.3d 82, 86 (2d Cir. 2000).

Clause Claim for failure to state a claim upon which relief can be granted,

brought pursuant to Fed. R. Civ. P. 12(b)(6).


## DISCUSSION

I.   **Rooker-Feldman deprives us of jurisdiction to consider Plaintiffs' claim that Colo. Const. Art. V, § 44 violates Article I, § 4 of the United States Constitution (the Elections Clause).**

Article V, § 44 of the Colorado Constitution provides, in relevant part:

> When a new apportionment shall be made by congress, the general assembly shall divide the state into congressional districts accordingly.

Although the plain text of this provision makes no mention of how often

congressional districts may be drawn, the Colorado Supreme Court in Salazar held

that Colo. Const. Art. V, § 44 limited redistricting to once per decade, to be

completed in the time between the decennial census and the first election of the

decade.  79 P.3d at 1243.  The Salazar court effectively held that once districts

are drawn, even if by a court, any subsequent electoral maps passed by the

legislature before the next census violate Article V of the state constitution.  Id.

Plaintiffs argue that such an interpretation of § 44 violates the Elections Clause of

the United States Constitution, which provides, in relevant part:

> The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof . . . .

U.S. Const. art. I, § 4.

For the reasons stated below, we hold that we lack jurisdiction over this claim under the Rooker-Feldman doctrine.[6]

###### A.     Rooker-Feldman generally

The overriding issue here is whether Plaintiffs, through instigation of a federal court suit, are actually seeking appellate review of the Colorado Supreme Court's decision in Salazar.   Under 28 U.S.C. § 1257, federal review of a final judgment from a state's highest court may be obtained only in the United States Supreme Court by writ of certiorari.   Consequently, with the exception of habeas corpus, the Rooker-Feldman doctrine prohibits a lower federal court from considering claims actually decided by a state court or "inextricably intertwined" with a prior state-court judgment.   See Rooker, 263 U.S. at 416; Feldman, 460 U.S. at 483 n.16; Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994).

As a general rule in the Tenth Circuit, Rooker-Feldman may not be invoked against a federal-court plaintiff who was not actually a party to the prior state-court judgment.   See De Grandy, 512 U.S. at 1006; Johnson v. Riddle, 305 F.3d 1107, 1116 (10th Cir. 2002).   However, the Tenth Circuit has permitted the

_____

[6]Under Rule 12(b)(1), where a party attacks the factual basis for jurisdiction, the court does not presume truthfulness of factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts. Pringle v. United States, 208 F.3d 1220, 1222 (10th Cir. 2000).

doctrine to be used against parties who were in privity with parties to the original state-court suit.  See Kenmen Eng'g v. City of Union, 314 F.3d 468, 481 (10th Cir. 2002) (applying Rooker-Feldman against parties who were not individually named in a prior state-court suit, since they were agents of the entity specifically named in the state-court action); see also Keller, 299 F. Supp. 2d at 1177 (finding Colorado governor to be in privity with Colorado secretary of state and General Assembly for purposes of Rooker-Feldman analysis).

Finally, Rooker-Feldman does not apply to claims brought parallel to the state-court action.  Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 125 S. Ct. 1517, 1521-22 (2005).  That is, only if the federal claim was filed after the state-court judgment will Rooker-Feldman deprive us of jurisdiction.  See, e.g., Keller, 299 F. Supp. 2d at 1177-78.

To summarize, at least three requirements must be met in order to deprive this court of jurisdiction under Rooker-Feldman.  First, the party against whom the doctrine is invoked must have actually been a party to the prior state-court judgment or have been in privity with such a party.  See De Grandy, 512 U.S. at 1006; Kenmen Eng'g, 314 F.3d at 481.  Second, the claim raised in the federal suit must have been actually raised or inextricably intertwined with the state-court judgment.  Rooker, 263 U.S. at 416; Feldman, 460 U.S. at 483 n.16.  Finally, the

federal claim must not be parallel to the state-court claim.  <u>Exxon Mobil Corp.</u>,

125 S. Ct. at 1521-22.

As to the last of these requirements, parallelism, it is not disputed that

Plaintiffs' claims here were filed after the Colorado Supreme Court's decision in

<u>Salazar</u>.  With regard to the first requirement, party identity, it is also not disputed

that none of the Plaintiffs here were actually parties to the <u>Salazar</u> litigation.

Thus, to invoke <u>Rooker-Feldman</u>, it must be shown that (1) Plaintiffs were in

privity with the parties in <u>Salazar</u>; and (2) Plaintiffs' claim under the Elections

Clause was actually decided by or "inextricably intertwined" with the judgment in

<u>Salazar</u>.[7]

### B.    Privity

The key inquiry here is whether Plaintiffs, a state representative and three

registered voters, stand in privity with the respondents in <u>Salazar</u>, the General

Assembly and the secretary of state.[8]  The answer depends on whether, for the

---

[7]Note that our <u>Rooker-Feldman</u> analysis in this section applies only to
whether we have jurisdiction to consider Plaintiffs' Elections Clause claim. We
discuss separately, <u>infra</u>, whether the doctrine deprives us of jurisdiction over
Plaintiffs' Petition Clause claim.

[8]In her brief, Defendant argues that privity exists not only between
Plaintiffs and the respondents in <u>Salazar</u>, but also with the petitioners in <u>Salazar</u>,
who were the Colorado attorney general and a United States congressman. Such
an argument does not comport with the purposes of <u>Rooker-Feldman</u>, which is
designed to prevent state-court losers from effectively appealing a judgment to a
lower federal court. <u>De Grandy</u>, 512 U.S. at 1005-06. For <u>Rooker-Feldman</u> to

(continued...)

purposes of the <u>Rooker-Feldman</u> jurisdictional bar, a state's citizens can be held to be in privity with their legislature.[9]

In determining when privity exists for <u>Rooker-Feldman</u> purposes, it is helpful to look to cases dealing with privity in the context of issue and claim preclusion.  The Supreme Court has held that when a state government litigates a matter of public concern, that state's citizens will be deemed to be in privity with the government for preclusion purposes.  <u>See</u> <u>Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n</u>, 443 U.S. 658, 693 n.32 (1979) (holding that Washington state's participation in earlier litigation over public fishing rights precluded later suit brought by individual citizens); <u>City of Tacoma v. Taxpayers of Tacoma</u>, 357 U.S. 320, 340-41 (1958) (holding that the outcome of Washington's litigation regarding the validity of Tacoma's federal license to construct a power plant on a river precluded a later suit brought by taxpayers).

---

[8](...continued)
apply to a federal-court plaintiff who was not a party to the state-court proceedings, that federal-court plaintiff must have been in privity with the state-court party that lost below.  <u>See, e.g.</u>, <u>Kenmen Eng'g</u>, 314 F.3d at 481 (applying <u>Rooker-Feldman</u> to non-parties who were in privity with party that lost in state court).  In this case, the losing state-court parties were the respondents, the Colorado General Assembly and the secretary of state.  Thus, the sole issue (with regard to privity) before us is whether the <u>Lance</u> Plaintiffs stand in privity with either the secretary of state or with the Colorado General Assembly.

[9]We need not decide whether Carl Miller, the Plaintiff who is a member of the Colorado Legislature, is also in privity with the Colorado General Assembly by virtue of his membership in the General Assembly because the citizen-privity doctrine would also establish privity as to Carl Miller in any event.

- 12 -

We believe that the principle announced in these cases—that the outcome of the government's litigation over a matter of public concern binds its citizens—should apply with equal force in the Rooker-Feldman context.  It is true that City of Tacoma and Washington deal primarily with common property rights, but that does not distinguish these cases from the instant case.  See Washington, 443 U.S. at 661-62; City of Tacoma, 357 U.S. at 322-23.  In City of Tacoma, the Court noted that the citizens were bound by the state's earlier litigation because, "[the citizens], in their common *public* rights as citizens of the State, were represented by the State in [the earlier] proceedings."  357 U.S. at 340-41 (emphasis added).

> Privity is merely a word used to say that the relationship between one who is a party on the record and another is close enough to include that other within the res judicata.  One relationship long held to fall within the concept of privity is that between a nonparty and party who acts as the nonparty's representative.

Marran v. Marran, 376 F.3d 143, 151 (3d Cir. 2004) (internal citations and quotations omitted).  The very nature of the relationship between the legislature and its constituents is one of representation.  Plaintiffs' claim under the Elections Clause asserts the powers and rights of state legislatures to draw congressional districts.  This is as much a matter of public concern and as much of a common public right as a State's ability to control the use and development of its navigable waters and streams.  See City of Tacoma, 357 U.S. at 340-41.  As a

- 13 -

result, we conclude that these Plaintiffs, who are individual citizens, stand in privity with the General Assembly[10] (which was a party to the Salazar litigation) for the purposes of asserting a claim under the Elections Clause of the Constitution.

### C.   Actually decided or "inextricably intertwined"

Having established that Plaintiffs stand in privity with the General Assembly, we now turn to whether Plaintiffs' Elections Clause claim was actually decided by or inextricably intertwined with the Colorado Supreme Court's judgment in Salazar.  As we noted in Keller, it appears that this very question was raised and decided by the Colorado Supreme Court in Salazar.  It is true that the Salazar court repeatedly noted that its decision was based purely on state law.  79 P.3d at 1231, 1237 n.10.

> Nevertheless, the Colorado Supreme Court appears ultimately to hold that the restriction they find in Colo. Const. Art. V, § 44—granting the General Assembly one, and only one, chance to create congressional districts through legislation—does not violate the federal Constitution when it concludes that "the state constitution limits redistricting to once per census, no matter which body creates the districts. Nothing in state or federal law contradicts this limitation." This statement can reasonably be taken as a holding that Colo. Const. Art. V, § 44 does not violate Article I, § 4 of the federal Constitution.

---

[10]Because we conclude Plaintiffs stand in privity with the General Assembly, we express no opinion as to whether Plaintiffs are in privity to the other respondent in Salazar, the secretary of state.

Keller, 299 F. Supp. 2d at 1182 (citation omitted) (quoting Salazar, 79 P.3d at

1231-32.).[11]   By arguing now, as Plaintiffs do, that Article V, § 44 of the

Colorado Constitution (as it has been interpreted by Salazar) runs afoul of Article

I, § 4 of the federal Constitution, Plaintiffs are functionally seeking appellate

review of an issue in a lower federal court decided by a state court.   Rooker-

Feldman is flatly violated.

Plaintiffs assert that their interest under the Elections Clause as private

citizens is an individual right distinct from the interest asserted by the Keller

defendants and the Salazar Respondents, which was a governmental right.[12]   But

---

[11]The respondents in Salazar explicitly raised the claim that the
interpretation of Art. V, § 44 which was ultimately adopted by the Colorado
Supreme Court would violate Art. I, § 4 of the federal Constitution.  Keller, 299
F. Supp. 2d at 1182.

[12]In support of their argument that it is possible to assert an individual right
under Article I, § 4, Plaintiffs point to Bush v. Gore, 531 U.S. 98 (2000), as
precedent.  In Bush, then-Governor Bush, a private citizen, asserted a claim under
Article II, § 1, cl. 2, which permits states to select the manner in which Electors
are appointed to the electoral college.  531 U.S. at 103.  Bush argued that the
Florida Supreme Court's decision to establish new standards for resolving
Presidential elections contests violated Art. II, § 1, cl. 2 and 3 U.S.C. § 5
(requiring state laws concerning any controversy or contest in the selection of
presidential electors be enacted six days before the electoral college meets).
Bush, 531 U.S. at 103.  Plaintiffs in the instant case argue that Art. II, § 1, cl. 2 is
similar to Art. I, § 4, in the sense that it creates a right in the legislature.  They
then argue that since Governor Bush, a private citizen, asserted an individual right
under Art. II, § 1, cl. 2, they too should be allowed to assert a claim under Art. I,
§ 4.
    There are at least two problems with this analysis.  First, even though
Governor Bush asserted a claim under Art. II, § 1, cl. 2, the per curiam opinion in

(continued...)

even if we were to interpret Article I, § 4 of the Constitution as creating some sort of distinct individual right, which we do not do,[13] that right would be necessarily derivative of the governmental right vested in the legislature by the Elections Clause.  If we accept Plaintiffs' premise that <u>Salazar</u> only decided that governmental rights under Article I, § 4 of the Constitution were not violated, the individual rights claim nevertheless cannot stand independently because it is inextricably intertwined with the state-court judgment in <u>Salazar</u>.

We determine whether a given federal lawsuit is "inextricably intertwined" with a state-court judgment by asking "whether the injury alleged by the federal plaintiff resulted from the state-court judgment itself or is distinct from that judgment."  <u>Kenmen Eng'g</u>, 314 F.3d at 476 (quotation omitted).

---

[12](...continued)
<u>Bush v. Gore</u> (which was the only opinion to receive majority support), never considered that claim on its merits.  <u>See Bush</u>, 531 U.S. at 103.  Instead, the majority decided the case on equal protection grounds.  <u>Id.</u>  Second, even if the Art. II claim were somewhat related to the equal protection claim (and therefore implicitly decided), the Supreme Court never discussed Governor Bush's standing to raise a claim under Article II.  We are not permitted to infer by negative implication that jurisdiction exists.  <u>See Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 119 (1984) ("[W]hen questions of jurisdiction have been passed on in prior decisions *sub silentio*, this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us.") (quotation omitted).

[13]Article I, § 4 of the federal Constitution by its language vests power in the legislature, not in ordinary citizens, and only the legislature is authorized to determine the manner of holding congressional elections.  Reapportionment is necessarily a governmental act rather than an individual act.

> Three related concepts—injury, causation, and redressability—inform this analysis. In other words, we approach the question by asking whether the state-court judgment *caused*, actually and proximately, the *injury* for which the federal-court plaintiff seeks *redress*. If it did, <u>Rooker-Feldman</u> deprives the federal court of jurisdiction.
>
> In conducting this analysis, we must pay close attention to the *relief* sought by the federal-court plaintiff; we cannot simply compare the *issues* involved in the state-court proceeding to those raised in the federal-court plaintiff's complaint.

<u>Id.</u> (citations and footnote omitted).

In conjunction with their claim under the Elections Clause, Plaintiffs requested the following forms of relief: (1) a declaration that Colo. Const. Art. V, § 44, as interpreted in <u>Salazar</u>, was unconstitutional under Article I, § 4 of the federal Constitution; (2) a declaration that Article I, § 4 of the U.S. Constitution requires the implementation of the legislative plan; and (3) an injunction requiring the secretary of state to implement the legislative plan.

The second and third requests for relief directly contradict the <u>Salazar</u> court's order mandating the use of the court-approved plan through the 2010 elections. <u>See</u> <u>Salazar</u>, 79 P.3d at 1243. In other words, if we were to grant these requests for relief, the functional effect of our decision would be to vacate the Colorado Supreme Court's order. The first request for relief explicitly seeks a declaration that Colo. Const. Art. V, § 44, *as interpreted by <u>Salazar</u>*, violates the federal Constitution. The very language of this request for relief shows that the injury complained of was caused by a state-court judgment. The redress sought

would invalidate that judgment, which concluded, <u>inter alia</u>, that Colo. Const. Art. V, § 44, did not violate the federal Constitution.

Thus, even if we were to construe Plaintiffs' claim as raising solely an individual right under the Elections Clause, that claim must be barred by <u>Rooker-Feldman</u> because it is inextricably intertwined with the state-court decision in <u>Salazar</u>.  As a result, we must GRANT Defendant's motion to dismiss Plaintiffs' Elections Clause claim for lack of jurisdiction on the basis of <u>Rooker-Feldman</u>.[14]

**II.   <u>Rooker-Feldman</u> and issue preclusion do not prevent us from considering the merits of Plaintiffs' claim that Colo. Const. Art. V, § 44 violates the First and Fourteenth Amendments of the United States Constitution (the Petition Clause).**

Plaintiffs' second claim is that "Colo. Const. Art. V, § 44, as interpreted by the Colorado Supreme Court in <u>Salazar</u>, deprives Plaintiffs of their rights to petition the government for redress of their grievances; to political association; and to access, participate in and communicate about the political process."  Defendant argues that <u>Salazar</u> requires dismissal of this claim, both on <u>Rooker-Feldman</u> and issue preclusion grounds.  We disagree for two reasons.  First, with regard to the <u>Rooker-Feldman</u> issue, we conclude that, although Plaintiffs stand in privity with the <u>Salazar</u> respondents for the purposes of the Elections Clause

---

[14]Because <u>Rooker-Feldman</u> is a jurisdictional doctrine, we do not consider whether issue preclusion, an affirmative defense, also requires dismissal of the claim.

claim, there is no such privity for purposes of the Petition Clause claim.  Second,
with regard to the issue preclusion argument, the issue presented by this claim
was not actually decided by the Colorado Supreme Court in Salazar.

A.     Dismissal under Rooker-Feldman

As noted above, Rooker-Feldman may only be applied against a federal
litigant who was a party to a prior state-court judgment or in privity with such a
party.  See De Grandy, 512 U.S. at 1006; Kenmen Eng'g, 314 F.3d at 481.  In our
analysis of Plaintiffs' Elections Clause claim, we held that privity existed
between Plaintiffs and the General Assembly (a respondent in Salazar) because of
the principle announced in City of Tacoma:  When the government litigates an
issue of public concern, that state's citizens will be deemed to be in privity with
the government.  357 U.S. at 340-41.

An important limitation on this principle, however, is that a suit brought by
a state cannot preclude private interests. See Satsky v. Paramount
Communications, Inc., 7 F.3d 1464, 1470 (10th Cir. 1993).  In Satsky, the State of
Colorado brought litigation against a polluter under the Comprehensive
Environmental Response, Compensation, and Liability Act ("CERCLA"), 42
U.S.C. §§ 9601-9675.  Satsky, 7 F.3d at 1467.  The state ultimately entered into a
consent decree with the polluter that mandated various remedial measures and
damages for environmental harm.  Id.  Several years later, a group of plaintiffs

also brought suit under CERCLA for harm sustained to their privately owned

land.  See id.  The polluter claimed that the earlier consent decree, negotiated by

the government, barred the later suits.  Id.  The Tenth Circuit noted that "[w]hen a

state litigates common public rights, the citizens of that state are represented in

such litigation by the state and are bound by the judgment."  Id. at 1470.  To the

extent that the state had recovered for injuries to the natural resources of

Colorado, the Tenth Circuit deemed the plaintiffs' suit barred.  Id.  However, to

the extent that the plaintiffs' suit sought damages for injuries to private interests,

the suit would not be barred since the state could not recover for injuries to the

plaintiffs' purely private interests.  Id.  According to the Tenth Circuit, a "purely

private interest" is a claim that the state has no standing to raise.  Id.

       The lesson in Satsky is that the concept of privity between the state and its

citizens is limited to claims involving institutional rights.  None of the privity

cases cited by the parties involve a finding of privity between the state and its

citizens when purely individual rights are at issue.

       The wisdom of the Satsky rule is powerfully demonstrated in the instant

case.  Unlike the Elections Clause Claim, a citizen's individual claim under the

Petition Clause is not a "common public right[]" and is, in fact, a "purely private

interest."  See City of Tacoma, 357 U.S. at 340-41; Satsky, 7 F.3d at 1470.  It is

not clear that the respondents in Salazar would have had standing to raise such a

- 20 -

claim on behalf of their constituents.  The very nature of a citizen's interest in the

Petition Clause (as a petitioner) stands in tension with the government's interests

(as the petitionee).  We cannot, as a result, conclude that the sort of privity

between a state government and its citizens established in City of Tacoma applies

to Plaintiffs' claim under the Petition Clause.

Defendants argue that privity may nevertheless be found under the theory

of "virtual representation."  The Ninth Circuit's decision in Irwin v. Mascott, 370

F.3d 924 (9th Cir. 2004), recently summarized a range of circumstances, broader

than traditional privity relationships, that have been referred to as "virtual

representation."  Id. at 929-30.  "A non-party can be bound by the litigation

choices made by his virtual representative," id. at 929, only if certain criteria are

met: "[A] close relationship, substantial participation, and tactical maneuvering

all support a finding of virtual representation; identity of interests and adequate

representation are necessary to such a finding."  Id. at 930.  In addition, courts are

more likely to find virtual representation when the issue litigated is a matter of

public concern.  Tyus v. Schoemehl, 93 F.3d 449, 457 (8th Cir. 1996).

Even if we were to adopt a theory of virtual representation, upon

considering these factors the evidence in the record does not warrant a finding of

privity between Plaintiffs and the Salazar respondents on the theory of virtual

representation.  Specifically, we do not find evidence of Plaintiffs' substantial

participation in the <u>Salazar</u> litigation nor do we find that the evidence establishes that the instant suit was merely part of a larger tactical scheme.  To be sure, the record does indicate that prior to filing the complaint in <u>Lance</u>, Plaintiffs' attorneys had conversations with the attorneys representing the General Assembly in <u>Salazar</u> to discuss the similarities and differences between the cases and how best to "efficiently represent Plaintiffs' claims."  Such conversations do not, however, rise to the level of tactical maneuvering that "directly contravene[] the policies supporting the preclusion doctrines."  <u>Tyus</u>, 93 F.3d at 457.  Also, as we noted in the prior section, there is no identity of interests under a First Amendment Petition Clause claim between the <u>Lance</u> Plaintiffs and the <u>Salazar</u> respondents.  As a result, with respect to Plaintiffs' Petition Clause claim, we decline to imply privity between Plaintiffs and the <u>Salazar</u> respondents on the basis of virtual representation.

Because we find no privity or virtual representation between the <u>Lance</u> Plaintiffs and the <u>Salazar</u> respondents, which is a necessary prerequisite to <u>Rooker-Feldman</u> preclusion, we do not need to decide whether the <u>Lance</u> Plaintiffs' claims are "inextricably intertwined" with the <u>Salazar</u> judgment. Because of the lack of privity, we DENY Defendants' Motion to Dismiss Plaintiffs' Petition Clause claim under <u>Rooker-Feldman</u>.

**B.     Issue preclusion**

The same reasons preventing us from applying Rooker-Feldman to Plaintiffs' Petition Clause claim also prevent us from applying the doctrine of issue preclusion.  Under the Full Faith and Credit Statute, 28 U.S.C. § 1738, federal courts give the same preclusive effect to state-court judgments that would be afforded to such prior judgments by other courts in that state.  Ryan v. City of Shawnee, 13 F.3d 345, 347 (10th Cir. 1993).  A party asserting issue preclusion must meet four requirements under Colorado law:

(1)     The issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding;

(2)     The party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding;

(3)     There was a final judgment on the merits in the prior proceeding; [and]

(4)     The party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.

Michaelson v. Michaelson, 884 P.2d 695, 700-01 (Colo. 1994).  For the reasons stated above, the second requirement (privity) cannot be met in the instant case with regard to Plaintiffs' Petition Clause claim.  In addition, the first requirement cannot be met because it is clear that the Salazar court never decided or even considered a claim under the First Amendment.  See Salazar, 79 P.3d at 1231-34 (discussing federal constitutional issues and making no mention of the First Amendment).

Accordingly, we DENY Defendant's motion to dismiss this claim on the grounds of issue preclusion.

### III. Plaintiffs' Petition Clause claim fails to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

Having concluded that Defendant's motion to dismiss Plaintiffs' Petition Clause claim on the basis of <u>Rooker-Feldman</u> and issue preclusion must be denied, we proceed to consider the merits of Plaintiffs' Petition Clause claim in the context of Defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). We accept all well-pleaded factual allegations in Plaintiffs' complaint as true and will not dismiss unless it appears beyond doubt that Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. <u>Sutton v. Utah State Sch. for Deaf & Blind</u>, 173 F.3d 1226, 1236 (10th Cir. 1999).

In their complaint, Plaintiffs summarize their Petition Clause claim as follows:

> Colo. Const. Art. V, § 44, as interpreted by the Colorado Supreme Court in <u>Salazar</u>, deprives Plaintiffs of their rights to petition the government for redress of their grievances; to political association; and to access, participate in and communicate about the political process.

In effect, Plaintiffs argue that since Colo. Const. Art. V, § 44, permits legislative redistricting only in the time between the decennial census and the first congressional election of the decade, the state constitution impermissibly impairs

Plaintiffs' ability to petition their government for redress of redistricting-related grievances once the narrow window for legislative action has passed.

### A.    Applicable law

Under the First Amendment of the Constitution, applicable to the states through the Fourteenth Amendment, "Congress shall make no law . . . abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. Const. amend. I; see also Edwards v. South Carolina, 372 U.S. 229, 235 (1966) (noting that First Amendment protections apply equally to the states by virtue of the Fourteenth Amendment).  Although the right to petition and the right to free speech are separate guarantees, they are related and generally subject to the same constitutional analysis.  Wayte v. United States, 470 U.S. 598, 611 n.11 (1985).  In essence, the right to petition the government is merely an assurance of a particular freedom of expression, and there is no sound basis for granting greater constitutional protection to statements made in a petition than other First Amendment expressions.  McDonald v. Smith, 472 U.S. 479, 482, 485 (1985).  The purpose of the right to petition is to guarantee that "people 'may communicate their will' through direct petitions to the legislature and government officials."  Id. at 482 (citations omitted).  The government may not infringe upon this guarantee either by a general prohibition against certain forms of advocacy or

by imposing sanctions for the expression of particular views it opposes.  See

Smith v. Ark. State Highway Employees, Local 1315, 441 U.S. 463, 464 (1979)

(per curiam).

However, there is no constitutional guarantee that a particular petition will

be effective.  Id. at 464-65. The First Amendment guarantees only that an

individual may "speak freely and petition openly" and that he will be free from

retaliation for doing so; but there is no affirmative obligation on the government

to listen or respond.  Id. at 465.

### B.    Analysis

As an initial matter, we note that nothing in Colo. Const. Art. V, § 44 (or,

for that matter, its interpretation in Salazar) expressly prohibits any form of

political speech or petition for redress.  Plaintiffs, like all other Colorado citizens,

are just as free as they have always been to write to their legislators requesting

passage of new congressional districts without fear of retaliation.  The only thing

that has changed is the legislature's ability to grant these citizens the relief they

request.  Plaintiffs contend, however, that their ability to petition the government

for changes in congressional districts is useless if the government is powerless to

act:

> Because Art. V, § 44 enjoins the enforcement of any legislative
> redistricting plan, it renders moot any attempts to petition the
> legislature regarding redistricting.  That is to say, Plaintiffs are
> denied any forum to petition, and the legislature is denied the ability

> to enact a redistricting plan to redress any grievances due to the operation of Art. V, § 44. . . . This discouragement and disqualification of petitioning activity on redistricting and the post hoc denial of representation and access to the legislature violates the Petition Clause.

Under this expansive reading of the Petition Clause, any time the government is powerless to grant redress a citizen seeks through a petition, the citizen's First Amendment rights are violated. Such an interpretation is not only unsupported by precedent, it would lead to absurd results.

It is well established that the right to petition the government does not include the right to have the government grant redress. See Smith, 441 U.S. at 464-65; Minnesota State Bd. for Community Colleges v. Knight, 465 U.S. 271, 285 (1984) ("Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues."). Plaintiffs argue, however, that there is a difference between a right to redress and the right to *possibility* of redress. Where the former is missing, the First Amendment is not implicated. But where a state law deprives its legislature of the latter, Plaintiffs contend, the citizenry's rights under the Petition Clause are violated. We disagree.

Such a view of the First Amendment would eviscerate all limits on governmental powers. For instance, imagine a hypothetical citizen writing to his

state senator, lobbying for the passage of a law which would deny state

employment to persons of color.  The state senator responds by including a copy

of the Fourteenth Amendment.  The state, he says, is simply powerless to

discriminate against minorities in its hiring practices.  According to Plaintiffs, the

inability of the state to grant relief would make the citizen's initial petition moot

and therefore violate the Petition Clause.  We simply cannot agree with Plaintiffs'

contention that there is "no meaningful distinction between prohibiting the object

of redress . . . [and] prohibiting the petitioning activity in the first place."  Under

Plaintiffs' view, the Petition Clause would permit the expanse of governmental

authority to be bounded only by desires and wishes of any single member of the

citizenry.  Given the Supreme Court's admonition that there is "no sound basis"

for according the Petition Clause any special constitutional status, we decline to

do so here.  See McDonald, 472 U.S. at 485.  Because there is no particular right

to redress implicated in the Petition Clause, Plaintiffs have failed to state a claim

upon which relief may be granted.


## CONCLUSION

For the reasons stated above, we GRANT Defendant's motion to dismiss

Plaintiffs' first claim for relief under Art. I, § 4 of the Constitution for lack of

jurisdiction, pursuant to Rooker-Feldman.  In all other respects, the motion to

dismiss on <u>Rooker-Feldman</u> and issue preclusion grounds is DENIED.  We

GRANT Defendant's motion to dismiss Plaintiffs' second claim for relief under

the Petition Clause for failure to state a claim upon which relief may be granted,

pursuant to Fed. R. Civ. P. 12(b)(6).

IT IS ORDERED that the Plaintiffs' Amended Complaint and cause of

action are dismissed with prejudice.