IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 03-cv-02453-ZLW-CBS

KEITH LANCE,
CARL MILLER,
RENEE NELSON,
NANCY O'CONNOR,

      Plaintiffs,

v.

GIGI DENNIS, SECRETARY OF STATE FOR
THE STATE OF COLORADO, in her Official Capacity only,

      Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Before **EBEL**, Senior Circuit Judge of the United States Court of Appeals for the Tenth Circuit, **PORFILIO**, Senior Circuit Judge of the United States Court of Appeals for the Tenth Circuit, and **WEINSHIENK**, Senior District Judge of the United States District Court for the District of Colorado.

---

**EBEL**, Senior Circuit Judge.

---

      This case is a continuation of one of several rounds of litigation based on Colorado's congressional redistricting after the 2000 census which resulted in dueling electoral maps—one created by the Colorado state courts in 2002, after the General Assembly failed to pass a plan in the allotted time, and the other created by the General Assembly after the 2002 election.  The <u>Lance</u> Plaintiffs brought suit against then-Secretary of State Davidson, asserting that Colo. Const.

Art. V, § 44, as interpreted by the Colorado Supreme Court, violated Art. I, § 4

of the U.S. Constitution (the "Elections Clause" claim) and the First and

Fourteenth Amendments of the U.S. Constitution (the "Petition Clause" claim).

Lance v. Davidson [hereinafter "Lance I"], 379 F. Supp. 2d 1117, 1122 (D. Colo.

2005).  The Supreme Court reversed our prior decision dismissing the complaint

and action and remanded the case to us for further consideration.  See Lance v.

Dennis, [hereinafter "Lance II"], 126 S. Ct. 1198 (2006).  Exercising jurisdiction

pursuant to 28 U.S.C. § 2284, we again DISMISS with prejudice Plaintiffs'

Amended Complaint and cause of action.

## BACKGROUND

The first round of litigation following Colorado's redistricting involved

two suits: 1) an original action in the Colorado Supreme Court by the state

attorney general, People ex rel. Salazar v. Davidson, 79 P.3d 1221 (Colo. 2003),

in which the Colorado Supreme Court held that Colo. Const. Art. V, § 44,

consistent with the federal Constitution, limited redistricting to once per decade,

such that the legislative plan passed in 2003—after the state court's adoption of a

plan in 2002—violated the state constitution, id. at 1226, 1231-32, 1243; and 2) a

federal court action brought by proponents of the court-ordered plan, Keller v.

Davidson, 299 F. Supp. 2d 1171 (D. Colo. 2004), in which this three-judge

district court ruled that defendants' original counterclaims, which also raised the

issue of whether Colo. Const. Art. V, § 44 violates Article I, § 4 of the Federal

Constitution, were precluded under Colorado issue preclusion law by the judgment in <u>Salazar</u>, <u>see</u> <u>Keller</u>, 299 F. Supp. 2d at 1181-83.

Prior to the dismissal in <u>Keller</u>, the <u>Lance</u> Plaintiffs brought this suit.  In our previous order in this suit, we ruled that the Plaintiffs' Elections Clause claim was jurisdictionally barred by the <u>Rooker-Feldman</u> doctrine, relying upon the Plaintiffs' privity status with litigants in <u>Salazar</u>.  <u>Lance I</u>, 379 F. Supp. 2d at 1125-27.  Additionally, we ruled that Plaintiffs' Petition Clause claim failed to state a claim upon which relief may be granted because Colo. Const. Art. V, § 44, as interpreted in <u>Salazar</u>, does not prohibit political speech or petition for redress. <u>Id.</u> at 1131-32.

On appeal from that order, the Supreme Court disagreed with our <u>Rooker-Feldman</u> ruling,[1] vacated our judgment, and remanded the case to us.  <u>Lance II</u>, 126 S. Ct. at 1202-03.   Because we dismissed Plaintiffs' Petition Claim on grounds other than <u>Rooker-Feldman</u>, our prior adjudication of that claim stands. <u>See</u> <u>Lance I</u>, 379 F. Supp. 2d at 1131-32 (dismissing for failure to state a claim upon which relief may be granted); <u>see also</u> <u>Lance II</u>, 126 S. Ct. at 1204 (Stevens, J., dissenting) ("[Plaintiffs'] spurious Petition Clause claim was also properly dismissed by the District Court.").  Accordingly, only Plaintiffs' Elections Clause

---

[1]  Specifically, the Supreme Court held that "[t]he <u>Rooker-Feldman</u> doctrine does not bar actions by nonparties to [an] earlier state-court judgment simply because, for purposes of [issue] preclusion law, they could be considered in privity with a party to the judgment." <u>Lance II</u>, 126 S. Ct. at 1202.

claim is before us again on remand.  We had not previously considered whether

issue preclusion barred that claim, see Lance I, 379 F. Supp. 2d at 1127 n.14, and

thus ordered the parties to address that defense in an initial motion to dismiss by

Defendant (now Secretary of State Dennis), accompanied by supporting and

responsive briefing.[2]  We held a hearing on that motion on July 26, 2006, and we

---

     [2] In a footnote to their supplemental brief to this court, Plaintiffs purport
to conditionally "move to amend their complaint by inter-lineation pursuant to
F.R.C.P. 15(a) and (b) to incorporate [Article I,] § 2 into their claim for relief
under [§ 4 of] Article I," "if we [the court] deem it necessary."  Plaintiffs have
failed to file a formal motion meeting the requirements of Fed. R. Civ. P. 7(b).
See Calderon v. Kan. Dep't of Soc. & Rehab. Servs., 181 F.3d 1180, 1186 (10th
Cir. 1999) (noting that "it [is] insufficient [for] the plaintiffs [to] ma[k]e a bare
request in their response to a motion to dismiss 'that leave be given to the
Plaintiffs to amend their Complaint'") (citation omitted).  Additionally,
Plaintiffs' request does not comply with local rules requiring parties to confer
before the court will consider a motion to amend.  See D.C. Colo. L.  Civ. R.
7.1A.  Plaintiffs' informal request for leave to amend, which does not comply
with federal or local rules, does "not place[] a motion before th[is] court."
Calderon, 181 F. 3d at 1186 (quotations omitted).

     To the extent that Plaintiffs' failure to file a proper motion under federal or
local rules is not fatal, see id., we would in any event deny their request.  The
general rule that "leave [to amend] shall be freely given when justice so
requires," Fed. R. Civ. P. 15(a), does not "permit plaintiffs to wait until the last
minute to ascertain and refine the theories on which they intend to build their
case."  Orr v. City of Albuquerque, 417 F.3d 1144, 1153 (10th Cir. 2005)
(quotations omitted); see also Duncan v. Manager, Dept. of Safety, City and
County of Denver, 397 F.3d 1300, 1315 (10th Cir. 2005) ("In the Tenth Circuit,
untimeliness alone is an adequate reason to refuse leave to amend.").  Plaintiffs
filed their amended complaint over two years ago.  Since then, the parties have
conducted discovery and briefed and argued this case before both this court and
the United States Supreme Court.  In light of the untimeliness of Plaintiffs'
attempt to add Art. I, § 2 as a new basis for their Elections Clause claim, and the
considerable time and resources expended by the courts and the parties
addressing the claims in the context presented by the Plaintiffs, we deny

(continued...)

now GRANT Defendant's motion to dismiss Plaintiffs' Elections Clause claim as barred by issue preclusion.

## DISCUSSION

Plaintiffs assert that their interest under the Elections Clause as private citizens constitutes an "individual" right—the right to vote in congressional districts authorized by the Elections Clause—that is independent and distinct from any "institutional" right—the powers and rights of the state legislatures to draw congressional districts—previously asserted by the litigants in <u>Salazar</u> or <u>Keller</u>.  Defendant argues that Plaintiffs' Elections Clause claim should be dismissed 1) for lack of standing; 2) for failure to state a claim;[3] and 3) based on the defense of issue preclusion.

## I.    Standing

We properly begin by determining whether the Plaintiffs have Article III standing to bring their Elections Clause claim, which requires the Plaintiffs to "allege (and ultimately prove) that they have suffered an 'injury in fact,' that the injury is fairly traceable to the challenged action of the Defendants, and that it is redressable by a favorable decision."  <u>Initiative and Referendum Inst. v. Walker,</u>

---

[2](...continued)
Plaintiffs' request to amend.

[3]  The litigants agree that the merits of Defendant's Rule 12(b)(6) motion were adequately briefed and argued and are therefore properly before us.

450 F.3d 1082, 1087 (10th Cir. 2006) (en banc).  Only the injury-in-fact

requirement—defined as "an invasion of a concrete and particularized legally

protected interest," McConnell v. Fed. Election Comm'n, 540 U.S. 93, 227

(2003) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992))—is

questionable here.[4]  Plaintiffs allege that "conducting congressional elections

under the Court's Plan instead of the General Assembly's Plan" injures the

Plaintiffs' individual right "to vote for congressional representatives in districts

authorized by th[e] [Elections Clause]"—that is, in districts created by the

General Assembly.[5]  Defendant argues that this allegation fails to state an "injury

in fact" because the right to vote in districts authorized by the Elections Clause is

not a "legally protected interest."  Although we disagree with Plaintiffs on the

merits, we conclude that they have presented a justiciable case or controversy.

Despite the confusion generated by the phrase "legally protected interest,"

two recent cases warn against conflating standing with the merits.  See In re

Special Grand Jury 89-2, 450 F.3d 1159, 1172 (10th Cir. 2006); Initiative &

---

[4]  Assuming Plaintiffs have a right to vote under the Elections Clause in congressional districts created by the state legislature, their alleged injury to that right is 1) fairly traceable to the Defendant's manner of conducting Colorado's congressional elections—that is, under the Court's rather than the General Assembly's plan—and 2) redressable because an injunction will remove any impediment to the legislature enacting its own redistricting plan.

[5]  Plaintiffs' request to strike the incorrect affidavits submitted in support of their standing allegations and to replace them with the revised affidavits submitted to this court is granted.

Referendum, 450 F.3d at 1092-97.  "For purposes of the standing inquiry, the

question is <u>not</u> whether the alleged injury rises to the level of a constitutional

violation.  That is the issue on the merits."  <u>Initiative & Referendum</u>, 450 F.3d at

1088 (emphasis added).  Thus, in this case, whether the Elections Clause vests

powers and rights only in the state legislature and Congress rather than conferring

distinct individual rights in private citizens, and whether the Elections Clause is

violated by conducting elections under a court's rather than the legislature's plan,

are merits issue.

    The relevant standing question is whether Plaintiffs have "present[ed] a

nonfrivolous legal challenge, alleging an injury to a protected right," even if "the

underlying interest is not legally protected."  <u>Id.</u> at 1093.  Although it is not

always clear which injuries will suffice, we have stated that "once an interest has

been identified as a 'judicially cognizable interest' in one case, it is such an

interest in other cases as well;" this is so even if it is "abundantly clear that the

interest [asserted] is indeed not protected by any law [because] that lack of

protection goes to the merits, not standing."  <u>In re Special Grand Jury 89-2</u>, 450

F.3d at 1172; <u>see also</u> <u>Bennett v. Spear</u>, 520 U.S. 154, 167 (1997) (substituting

"judicially cognizable interest" for "legally protected interest" in the definition of

"injury in fact").

    It can hardly be doubted that the Supreme Court has recognized the right to

vote as a "judicially cognizable interest."  <u>See, e.g.</u>, <u>Reynolds v. Sims</u>, 377 U.S.

- 7 -

533, 554 (1964) ("[T]he Constitution of the United States protects the right of all

qualified citizens to vote, in state as well as in federal elections."); <u>United States</u>

<u>v. Classic</u>, 313 U.S. 299, 314 (1941) ("The right of the people to choose . . . is a

right established and guaranteed by the Constitution and hence is one secured by

it to those citizens and inhabitants of the state entitled to exercise the right.").   In

fact, as one prominent treatise describes, "[e]lectoral interests are among the

abstract interests that support standing in a wide variety of settings."   13 Charles

Alan Wright, Arthur R. Miller, & Edward H. Cooper, <u>Federal Practice &</u>

<u>Procedure</u>, § 3531.4.[6]  Whether the right to vote is protected by Article I, § 2,[7]

---

[6]  Voters have established standing, <u>inter alia</u>, to challenge districting that violates the "one person one vote" standard, <u>see</u> <u>Baker v. Carr</u>, 369 U.S. 186, 206-07 (1962); to defend or attack at-large voting schemes, <u>see</u> <u>Meeks v. Metro. Dade County</u>, 985 F.2d 1471, 1480 (11th Cir. 1993); <u>McGill v. Gadsden County Comm'n.</u>, 535 F.2d 277, 279 (5th Cir. 1976); to protect the right to vote, <u>see</u> <u>Rice v. Cayetano</u>, 146 F.3d 1075, 1076 n. 3 (9th Cir. 1998), <u>vacated on other grounds by</u> 528 U.S. 495 (2000), <u>opinion vacated on remand</u>, 208 F.3d 1102 (9th Cir. 2000); to challenge acts claimed to dilute the right to vote, <u>see</u> <u>Dep't of Commerce v. U.S. House of Representatives</u>, 525 U.S. 316, 329-34 (1999); <u>Michel v. Anderson</u>, 14 F.3d 623, 626 (D.C. Cir. 1994); <u>Carey v. Klutznick</u>, 637 F.2d 834, 838 (2d Cir. 1980); to question election by plurality, <u>see</u> <u>Jose v. Mesa</u>, 503 F.2d 1048, 1048 (9th Cir. 1974); to attack limits on the methods of casting votes, <u>see</u> <u>Burdick v. Takushi</u>, 937 F.2d 415, 417-18 (9th Cir. 1991), <u>aff'd on other grounds</u> 504 U.S. 428 (1992); to facilitate registration as voters, <u>see</u> <u>Coalition for Sensible & Humane Solutions v. Wamser</u>, 771 F.2d 395, 399 (8th Cir. 1985); to question the composition of government boards, <u>see</u> <u>Quinn v. Millsap</u>, 491 U.S. 95, 102-03 (1989); <u>Dillard v. Baldwin County Comm'rs</u>, 225 F.3d 1271, 1275-80 (11th Cir. 2000); <u>Cleveland County Assn. v. Cleveland County Bd. of Comm'rs.</u>, 142 F.3d 468, 472-473 (D.C. Cir. 1998); <u>League of Women Voters v. Nassau County Bd. of Supervisors</u>, 737 F.2d 155, 162 (2d Cir. 1984); to protect the free flow of information, <u>see</u> <u>Fed. Elections Comm'n v.</u>

(continued...)

the First and Fourteenth Amendments,[8] or some other constitutional provision, it

is a "judicially cognizable interest" such that Plaintiffs have "alleg[ed] an injury

to a protected right," Initiative & Referendum, 450 F.3d at 1093, sufficient to

establish standing.  It is irrelevant for standing purposes, however, that Plaintiffs

do not specifically raise their right to vote claim under Article I, § 2 or the First

or Fourteenth Amendments of the U.S. Constitution because "there is no

requirement that the legal basis for the interest of a plaintiff that is 'injured in

---

[6](...continued)
Akins, 524 U.S. 11, 20-21 (1998); to help candidates, see Lerman v. Bd. of Elections, 232 F.3d 135, 142-43 (2d Cir. 2000); Joseph v. United States Civil Serv. Comm'n, 554 F.2d 1140, 1145-49 (D.C. Cir. 1977); to protest acts that injure a preferred candidate, see Miller v. Moore, 169 F.3d 1119, 1123 (8th Cir. 1999); to challenge contribution limits, see Shrink Mo. Gov't PAC v. Adams, 161 F.3d 519, 521 (8th Cir. 1998), vacated on other grounds, 528 U.S. 1148 (2000); and to set aside term limits, see Citizens for Legislative Choice v. Miller, 144 F.3d 916, 920 (6th Cir. 1998).  See 13 Wright et al., supra, § 3531.4.

[7]  See White v. Weiser, 412 U.S. 783, 786, 792 (1973) (affirming a federal district court's rejection of a legislative reapportionment plan as violative of the plaintiff's rights under Art. I, § 2); see also Harper v. Virginia State Bd. of Elections, 383 U.S. 663, 665 (1966) ("[T]he right to vote in federal elections is conferred by Art. I, § 2 of the Constitution . . . .").

[8]  See Burdick, 504 U.S. at 434 ("A court considering a challenge to a state election law must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'") (quoting Anderson v. Celebrezze, 460 U.S. 780, 789 (1983)); see also James A. Gardner, Liberty, Community, and the Constitutional Structure of Political Influence: A Reconsideration of the Right to Vote, 145 U. Pa. L. Rev. 893, 963 (1997).

fact' be the same as, or even related to, the legal basis for the plaintiff's claim, at least outside the taxpayer-standing context."  <u>In re Special Grand Jury 89-2</u>, 450 F.3d at 1173.

## II.      Defendant's Rule 12(b)(6) Motion to Dismiss

The Elections Clause states: "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but Congress may at any time make or alter such Regulations, except as to the Place of chusing Senators."  U.S. Const. art. I, § 4, cl. 1.  Neither the language nor the history of the Elections Clause suggests that the Framers intended to confer a freestanding individual right to vote in congressional districts created under that Clause.[9]  Furthermore, none of the cases

_____

[9]  As we noted in <u>Lance</u>, the Elections Clause "by its language vests power in the legislature, <u>not in ordinary citizens</u>."  379 F. Supp. 2d at 1126 n.13 (emphasis added).  A review of the history behind the ratification of the Elections Clause indicates that the various debates within the state ratifying conventions focused on federalism concerns and "suggests that the structure of the Elections Clause is meant to allow Congress to police state legislative affronts to republican government."  Jamal Green, <u>Judging Partisan Gerrymanders under the Elections Clause</u>, 114 Yale L.J. 1021, 1039 (2005); <u>see also id.</u> at 1026 (indicating that the fundamental purpose of the Elections Clause was to limit "the ability of state legislatures to manipulate the outcomes of congressional elections").  Accordingly, the Elections Clause is described as vesting power in the state legislature to regulate the times, places, and manner of holding elections for representatives subject to the authority conferred on Congress to make or alter such regulations.  <u>See, e.g.</u>, <u>U.S. Term Limits, Inc. v. Thornton</u>, 514 U.S. 779, 805 (1995) ("The[] [Elections] Clause[] [is] [an] express delegation[] of power to the States to act with respect to federal elections."); <u>id.</u> at 834 ("The Elections Clause gives States authority 'to enact the numerous requirements as to procedure (continued...)

cited by Plaintiffs has recognized (or even suggested) that such a right exists.

While we therefore doubt whether the specific interest asserted by Plaintiffs—a

right to vote in a congressional district created by the legislature under the

Elections Clause—is constitutionally protected, we need not decide that issue if

Plaintiffs' claim is in any event barred by the Salazar decision pursuant to

Colorado state issue preclusion law.

Under Colorado law, issue preclusion (or "collateral estoppel") applies if

the Defendant demonstrates the following four requirements:

> 1) The issue precluded is identical to an issue actually litigated and
> necessarily adjudicated in the prior proceeding;
> (2) The party against whom estoppel was sought was a party to or
> was in privity with a party to the prior proceeding;
> (3) There was a final judgment on the merits in the prior proceeding;
> [and]
> (4) The party against whom the doctrine is asserted had a full and
> fair opportunity to litigate the issues in the prior proceeding.

Lance I, 379 F. Supp. 2d at 1129-30 (quoting Michaelson v. Michaelson, 884

P.2d 695, 700-01 (Colo. 1994)); see also id. (indicating that Colorado issue

preclusion law controls in this case); 28 U.S.C. § 1739 (Full Faith and Credit

Statute).  Plaintiffs attempt to avoid any preclusive effects of Salazar by asserting

that the Salazar litigants asserted only an institutional rights claim under the

Elections Clause, whereas Plaintiffs have instead raised an individual rights claim

---

[9](...continued)
and safeguards which experience shows are necessary in order to enforce the
fundamental right involved.'") (citation omitted).

under that Clause.[10]  But the fact that Plaintiffs raise a different claim than the

Salazar litigants does not per se negate the defense of issue preclusion.

Under Colorado law, the doctrine of issue preclusion "is broader than the

doctrine of res judicata [or claim preclusion] because it applies to claims for

relief different from those litigated in the first action, but narrower in that it

applies only to issues actually litigated." S.O.V. v. People, 914 P.2d 355, 359

(Colo. 1996).  In other words, under the doctrine of issue preclusion, even though

a plaintiff asserts a different claim, a prior determination of an issue is conclusive

in the subsequent action between the parties (or their privies) if the "'issue of

fact or law is actually litigated and determined by a valid and final judgment, and

the determination [of the issue] is essential to the judgment.'"  City and County

of Denver v. Block 173 Assocs., 814 P.2d 824, 831 (Colo. 1991) (quoting

Restatement (Second) of Judgments § 27 (1980)).

------

[10]  In their Amended Complaint, Plaintiffs asserted that "Article V, § 44 of
the Colorado Constitution, as interpreted by the Colorado Supreme Court in
Salazar, impermissibly usurps the power properly reserved to the Colorado
legislature by the federal Elections Clause."  Although that claim can be
construed as asserting an institutional rights claim, Plaintiffs appear to have
foregone that claim on remand arguing only that their individual rights claim is
not barred by issue preclusion.  In any event, even if Plaintiffs were continuing to
allege an institutional rights claim, we would find such a claim barred by the
decision in Salazar pursuant to the defense of issue preclusion based on our
analysis in Keller and Lance I, as well as our analysis in this memorandum
opinion and order.

As they do now before us, Plaintiffs characterized their claim before the

Supreme Court as an individual rights claim separate and distinct from any

institutional rights claim asserted in a prior proceeding.  On appeal, Justice

Stevens nevertheless concluded that "all of the requirements under Colorado law

for issue preclusion have been met, and appellants' Elections Clause claim should

therefore be dismissed."  Lance II, 126 S. Ct. at 1204 (Stevens, J., dissenting);

see also id. at 1203 (Ginsburg, J., concurring; joined by Souter, J.) (agreeing that

Justice Stevens "persuasively urged that issue preclusion warrants affirmance").

For the reasons discussed below, we agree.

**A.      The issue precluded is identical to an issue "actually litigated"
          and "necessarily adjudicated" in Salazar**

Because issue preclusion bars relitigation of issues, whether part of the

same or a different claim, see Block 173 Assocs., 814 P.2d at 831; S.O.V., 914

P.2d at 358-59, we need to determine only whether an essential issue of

Plaintiffs' individual rights claim was "actually litigated" and "necessarily

adjudicated" in Salazar.[11]  In order for an issue to be "actually litigated," "the

parties must have raised the issue in a prior action."  In re Water Rights of Elk

Dance Colo., LLC, — P.3d — , 2006 WL 1737826, at *6 (Colo. 2006).  "An

---

[11]  The third element of issue preclusion—final judgment on the merits—is
easily met, see Keller, 299 F. Supp. 2d at 1182, and undisputed in this case.

issue is 'necessarily adjudicated' when a determination on that issue was necessary to the judgment."  Id.

Here, Plaintiffs' individual rights claim is that "conducting congressional elections under the Court's Plan instead of the General Assembly's Plan [pursuant to Colo. Const. Art. V, § 44, as interpreted in Salazar,] . . . violate[s] . . . the rights of Plaintiffs . . . to vote for congressional representatives in districts authorized by [the Elections Clause]"—i.e., in districts created by the General Assembly.  An irreducibly necessary issue—indeed, a sine qua non—to adjudicating this asserted individual rights claim is deciding who may redistrict under the Elections Clause.  That issue was "actually litigated" and "necessarily adjudicated" in Salazar.

In Salazar, the Colorado Supreme Court noted that the Secretary of State and General Assembly relied on the Elections Clause to "argue that . . . the United States . . . Constitution[] grant[s] the General Assembly the exclusive authority to draw congressional districts."  79 P.3d at 1232.  Additionally, that issue was decided by the state court.  See id. at 1231-32; Lance I, 379 F. Supp. 2d at 1125-26 ("The Colorado Supreme Court appears ultimately to hold that the restriction they find in Colo. Const. Art. V, § 44—granting the General Assembly one, and only one, chance to create congressional districts through legislation—does not violate the federal Constitution . . . .") (quotations

omitted);[12] <u>Keller</u>, 299 F. Supp. 2d at 1182 (concluding that the <u>Salazar</u> court

decided whether Colorado's prohibition of mid-decade redistricting violated the

Elections Clause).  And that decision was necessary to the <u>Salazar</u> court's

judgment.  <u>See</u> <u>Keller</u>, 299 F. Supp. 2d at 1182.  Accordingly, the first

requirement for issue preclusion under Colorado law is satisfied.  <u>See</u> <u>Lance II</u>,

126 S. Ct. at 1204 (Stevens, J., dissenting) ("The Elections Clause claim

advanced by citizen-appellants in this case is the same as that advanced by their

official representatives and decided by the Colorado Supreme Court in . . .

<u>Salazar</u> . . . .).

**B.     Party to or in privity with a party to the prior proceeding**

Although the <u>Lance</u> Plaintiffs were not parties to <u>Salazar</u>, issue preclusion

applies if they were in privity with one or more of the litigants to that decision.

<u>Michaelson</u>, 884 P.2d at 700-01.  "Privity between a party and a nonparty

requires both a substantial identity of interests and a working or functional

---

[12]   Recently in <u>League of United Latin American Citizens v. Perry</u>, — S.
Ct. — , 2006 WL 1749637 (June 28, 2006), a plurality of the Court noted that
"the Constitution and Congress state no explicit prohibition" to mid-decade
redistricting changes.  <u>Id.</u> at *12; <u>see also</u> <u>id.</u> at 37 (Stevens, J., concurring i n
part) ("[The district court] correctly found that the [federal] Constitution does not
prohibit a state legislature from redrawing congressional districts in the middle of
a census cycle.").  That statement does not affect the validity of the Colorado
Supreme Court's decision in <u>Salazar</u>, determining that the <u>Colorado</u> <u>Constitution</u>
prohibited mid-decade redistricting, <u>see</u> 79 P.3d at 1243, because a state
constitution may impose more stringent restrictions on redistricting than the
federal Constitution.

- 15 -

relationship in which the interests of the non-party are presented and protected by the party in the litigation." Elk Dance Colo., 2006 WL 1737826, at *7 (quotations, alteration omitted).

Where the party to an earlier action is an official or agency invested by law with authority to represent the person's interest, then a sufficiently close relationship exists to permit a finding of privity between the parties. See Restatement (Second) of Judgments § 41(1)(d) (stating that a person is represented by a party who is "[a]n official or agency invested by law with authority to represent the person's interests") (quoted with approval in People in re M.C., 895 P.2d 1098, 1102 (Colo. Ct. App. 1994), aff'd on other grounds, 914 P.2d 355 (Colo. 1996) (en banc)).  In Salazar, the Secretary of State participated in her capacity as administrator of the election laws, representing the voters of Colorado.  See Salazar, 79 P.3d at 1230-31 (citing Colo. Rev. Stat. § 1-1-107(1)(a)(2003)).  Further, as we described in Lance I, "[t]he very nature of the relationship between the legislature and its constituents is one of representation." 379 F. Supp. 2d at 1125.  Thus, Plaintiffs had a sufficiently close relationship with both the Secretary of State and the General Assembly to permit a finding of privity.[13]

_____

[13]  Because we ultimately conclude, for reasons explained more fully below, that Plaintiffs stand in privity with the Secretary of State and the General Assembly, we need not decide whether Plaintiffs also stand in privity with the

(continued...)

Most precedent indicates, however, that a state's earlier representation cannot deprive a private individual, not a party to the prior action, of the opportunity to litigate "intensely individual rights," 18A Charles Alan Wright et al., supra, § 4458.1, or "purely private interests," Satsky v. Paramount Commc'ns, Inc., 7 F.3d 1464, 1470 (10th Cir. 1993).  For example, one Colorado court has specifically stated that "when the interests of the sovereign are different from those of the private individual, maintenance of an action by the state may not preclude litigation by the individual affected.  Rather, both the public agency and the private party may pursue enforcement of their interests."  People in re M.C., 895 P.2d at 1102.  Preclusion based on a prior action involving a state official or agency will thus ordinarily apply against citizens of the state in a subsequent suit only when the prior suit involved "'a matter of general interest to all its citizens.'"  McNichols v. City & County of Denver, 74 P.2d 99, 102 (Colo. 1937) (en banc) (emphasis added) (quoting 1 Freeman on Judgments, 1090 (5th ed.)); see also Atchison, Topeka & Santa Fe. Ry. Co. v. Bd. of County Comm'rs, 37 P.2d 761, 764 (Colo. 1934) (en banc) ("[A] judgment against a county or its legal representatives, in a matter of general interest to all the people . . . is binding, not only on the county and its official representatives named as defendants, but also upon all taxpayers of the county though not named as

---

[13](...continued)
Attorney General or the Governor, both of whom were also Salazar litigants.

- 17 -

defendants in the case.") (emphasis added).[14]   Accordingly, under Colorado law,

the extent to which individuals are privies of the state depends on whether the

issue asserted by the private citizen and previously asserted by a public entity

that represents the private citizen "is a matter of general interest to all the

people," Atchinson, 37 P.2d at 764; see also McNichols, 74 P.2d at 102, and

_____

[14]   Compare Washington v. Wash. State Commercial Passenger Fishing
Vessel Ass'n, 443 U.S. 658, 692-93 & 692 n.32 (1979) (holding that
Washington's participation in earlier litigation over public fishing rights
precluded later suit brought by individual citizens because the state represented
its citizens "in their common public rights") (quotations omitted) (emphasis
added); City of Tacoma v. Taxpayers of Tacoma, 357 U.S. 320, 340-41 (1958)
(holding that taxpayer plaintiffs were barred from contesting validity of bond
issued by the city to pay for construction of dam based on prior action by state
objecting to issuance of dam license because the taxpayer plaintiffs "in their
common public rights as citizens of the State, were represented by the State")
(emphasis added); Alaska Sport Fishing Ass'n v. Exxon Corp., 34 F.3d 769, 773
(9th Cir. 1994) (holding that sport-fishermen plaintiffs were in privity with state
for purposes of relitigating damages caused by Exxon Valdez oil spill), with
Richards v. Jefferson County, 517 U.S. 793, 803 (1996) (distinguishing between
cases in which the taxpayer seeks redress for the "misuse of public funds, "or
about other public action that has only an indirect impact on his interests," and
cases in which taxpayers "present[] a federal constitutional challenge to a State's
attempt to levy personal funds," for purposes of determining the applicability of
state res judicata principles) (emphasis added); Town of Lockport v. Citizens for
Community Action at the Local Level, Inc., 430 U.S. 259, 263 n.7 (1977)
(approving district court determination that voter plaintiffs' challenge was not
barred by county's prior suit where voter plaintiffs asserted that the worth of
their individual vote was diluted, in violation of the "one man, one vote
principle" under the Equal Protection clause); Satsky, 7 F.3d at 1470 (holding
that a consent judgment in a prior state action barred claims for injuries to
"common public rights" but not injuries to "purely private interests," defined as
claims the state has no standing to raise).  See generally Lucas v. Planning Bd., 7
F. Supp. 2d 310, 327-28 (S.D.N.Y. 1998) (gathering cases).

whether "the interests of the sovereign are different from those of the private individual," People in re M.C., 895 P.2d at 1102.

Plaintiffs again rely on the characterization of their Elections Clause claim as an individual rights claim to argue that privity does not exist.  While the right to vote clearly belongs to the individual, not the state, see Burdick, 504 U.S. at 433 (referring to the "individual's right to vote") (emphasis added); Thornton, 514 U.S. at 844 (1995) (Kennedy, J., concurring) ("[T]he federal right to vote . . . in a congressional election . . . belong[s] to the voter in his or her capacity as a citizen of the United States.") (emphasis added), a voting rights claim may nevertheless constitute a matter of public interest, see Tyus v. Schoemehl, 93 F.3d 449, 457 (8th Cir. 1996) ("The [voter] plaintiffs do not allege that they have been denied the individual right to vote.  Rather, they allege that the strength of the black vote in general has been diluted.  Because the [voter] plaintiffs do not allege that they have a different private right not shared in common with the public, the plaintiffs raise an issue of public law . . . .") (citations, quotations omitted; emphasis added).

Here, the Lance Plaintiffs do not assert an injury to a distinct individual right not shared in common with the public.  Instead, the particular interest asserted by the Lance Plaintiffs here—the right to vote in districts created by the legislature in accordance with the Elections Clause—is a matter of general and public interest (if it is a constitutionally protected interest at all).  See id.  As a

- 19 -

result, the mere fact that Plaintiffs articulate their Elections Clause claim as an

individual rights claim, or characterize it as based on the right to vote, does not

itself exempt the Plaintiffs from the general principle under Colorado law that

"[a] judgment against [the government] or its legal representative in a matter of

general interest to all its citizens is binding upon the latter, though they are not

parties to the suit." McNichols, 74 P.2d at 102 (quotations omitted); cf. Lance I,

379 F. Supp. 2d at 1128 (noting that privity between the state and its citizens "is

limited to claims involving institutional rights"—not "purely private interest[s]")

(citing Satsky, 7 F.3d at 1470).[15]

Plaintiffs' Elections Clause claim is not based on individual interests that

are "more far-reaching" or "of a different and broader nature" than the interests

of the state asserted in the prior litigation. People in re M.C., 895 P.2d at

---

[15] We note that a leading treatise has described voting rights as "important individual interests in public rights that warrant relitigation after unsuccessful government litigation." 18A Wright et al., supra, § 4458.1; see also 18 Moore's Federal Practice § 131.40(3)(e)(B) ("[I]ndividuals asserting violations of their civil rights frequently are permitted to bring private actions despite past or pending litigation by the government addressing the same acts or practices by the defendants."). However, in each of the cases cited in support of this principle, privity between the governmental official and the voter plaintiffs was lacking either because the voter plaintiffs in those cases asserted a distinct, private voting interest or because the voter plaintiffs' interests diverged from the governmental official's interest. As we have already determined, the Lance Plaintiffs do not assert a distinct individual right, and the interests asserted in Salazar by the Secretary of State and the General Assembly did not diverge from the Lance Plaintiffs' interests, which are necessarily derivative of the governmental right vested in (and asserted by) the General Assembly.

1101-02 (holding that a child plaintiff did not stand in privity with the state in an original paternity proceeding because the child's interests in the action were "different and more far-reaching" or "of a different and broader nature" than those of the state).  As we explained in <u>Lance I</u>, to the extent that the Elections Clause confers any individual rights, "th[ose] right[s] would be necessarily derivative of the governmental right vested in the legislature by the Elections Clause."  379 F. Supp. 2d at 1126; <u>see also</u> <u>id.</u> at 1127 n.13.  Consequently, any individual rights of the Plaintiffs under the Elections Clause cannot be greater than the legislature's rights under that Clause, and Plaintiffs are thus entitled to no greater relief than the relief to which the legislature is entitled—<u>i.e.</u>, to have the legislature draw the congressional districts.  The General Assembly's rights under the Elections Clause cannot be considered merely "supplemental" to the Plaintiffs' rights, <u>see</u> Restatement (Second) of Judgments § 41(1)(d) cmt. d (cited with approval in <u>People in re M.C.</u>, 895 P.2d at 1102); <u>see also</u> <u>People in re M.C.</u>, 895 P.2d at 1101 (describing that "the state ha[s] a monetary purpose in bringing a paternity action, [whereas] the child's interests in bringing a paternity action also include such matters as right to inheritance, custody, and the determination of an accurate family medical history."); <u>cf.</u> <u>Brown & Williamson Tobacco Corp. v. Gault</u>, 627 S.E.2d 549, 552-53 (Ga. 2006) (holding that individual plaintiffs and state were not in privity for purposes of compensatory damages but were privies for purposes of punitive damages).  We therefore

conclude that the general concept of privity between a state and its citizens in a matter of public interest should apply in this case.

We find further support for this conclusion in the various opinions issued by the Supreme Court in Lance II.  Despite Plaintiffs' articulation of their claim as based on individual rights, Justice Stevens concluded that "as a matter of Colorado law, [Plaintiffs] are clearly in privity with both then-Colorado Attorney General Salazar, who brought the suit on behalf of the people of Colorado, and the Colorado General Assembly, which was also a party to the Salazar litigation." Lance II, 126 S. Ct. at 1204 (Stevens, J., dissenting) (citing McNichols, 74 P.2d at 102; Atchinson, 37 P.2d at 764).  Justices Ginsburg and Souter agreed that "Justice Stevens has persuasively urged that issue preclusion warrant[ed] affirmance."  Id. at 1203 (Ginsburg, J., concurring).  And the majority did not challenge our conclusion that Plaintiffs stand in privity with the General Assembly, but rather merely held that we "erroneously conflated preclusion law with Rooker-Feldman."  Id. at 1202; see also Lance I, 379 F. Supp. 2d at 1125.

In short, Plaintiffs' articulation of their Elections Clause claim as an individual rights claim does not negate the fact that Plaintiffs' asserted interest of voting in congressional districts authorized by the Elections Clause is "a matter of general interest to all the people," Atchinson, 37 P.2d at 764, and is neither "broader in nature" nor "more far-reaching" than the General Assembly's interests under the Elections Clause, because any individual rights under that

- 22 -

Clause are necessarily derivative of the state legislatures rights, <u>People in re</u>

<u>M.C.</u>, 895 P.2d at 1102-02.  Accordingly, we conclude that Plaintiffs stand in

privity with the Secretary of State and the General Assembly for the purposes of

asserting a claim under the Elections Clause of the Constitution and that the

second requirement of issue preclusion under Colorado is thus satisfied.

### C.     Full and fair opportunity

Under Colorado law, we look to the following in determining whether a

party had a full and fair opportunity to litigate an issue:

> "(1) whether the remedies and procedures of the first proceeding are
> substantially different from those in the proceeding in which collateral
> estoppel is asserted;
> (2) whether the party . . . against whom collateral estoppel is sought
> had sufficient incentive to litigate vigorously; and
> (3) the extent to which the issues [being litigated] are identical."

<u>Keller</u>, 299 F. Supp. 2d at 1183 (quoting <u>Antelope Co. v. Mobil Rocky Mountain,</u>

<u>Inc.</u>, 51 P.3d 995, 1003 (Colo. Ct. App. 2001)).  As the panel in <u>Keller</u>

concluded, "we have been given no reason to believe [the public officials in

<u>Salazar</u>] lacked strong incentives to litigate their federal claims vigorously before

the Colorado Supreme Court."  <u>Id.</u>  And, even if the constitutional claim here is

not framed in exactly the same terms as it was in <u>Salazar</u>, "the arguments

presented to the state court adequately raised the same <u>issue</u> [Plaintiffs] seek to

litigate before this panel."  <u>Id.</u> (emphasis added).  Thus, Plaintiffs were not

denied a full and fair opportunity to litigate the issue of the state legislature's

powers and rights to redistrict under the Elections Clause.  See Lance II, 126 S.

Ct. at 1204 (Stevens, J., dissenting) ("[A]ppellants' second question presented is

literally the same question presented by the General Assembly on certiorari

review (and denied) in Salazar.") (quotation omitted).[16]

### D.    Conclusion

The Colorado Supreme Court held in Salazar that "the restriction [it found]

in Colo. Const. Art. V, § 44—granting the General Assembly one, and only one,

chance to create congressional districts through legislation—does not violate the

federal Constitution."  See Keller, 299 F. Supp. 2d at 1182 (citing Salazar, 79

P.3d at 1231-32).  By arguing, as Plaintiffs do, that "conducting congressional

---

[16]  The General Assembly's First Question Presented in Salazar asked:

Whether the Constitution's Elections Clause (Article I, Section 4,
Clause 1), . . . permits a State to disable the state legislature from
prescribing congressional districts for an entire decade, and transfer
that power to the state judiciary, unless the legislature enacts a
redistricting plan within a severe, one-year time limit uniquely
applicable to congressional redistricting statutes?

The Lance Plaintiffs' Second Question Presented to the United States
Supreme Court in their recent appeal asked:

Is the Constitution's Elections Clause (Article I, Section 4, Clause 1),
. . . violated by a provision of state law that disables the state
legislature from prescribing congressional districts for an entire decade,
and transfers that power to the state judiciary, unless the legislature
enacts a redistricting plan within a severe, one-year time limit uniquely
applicable to congressional redistricting statutes?

elections under the Court's Plan instead of the General Assembly's Plan violates their right to vote for congressional representatives in districts authorized by th[e] [Elections Clause]," Plaintiffs are functionally seeking to relitigate an identical issue advanced by the Secretary of State and the General Assembly, with whom the Plaintiffs are in privity, that was necessarily decided by the valid and final judgment in <u>Salazar</u>.  The Colorado Supreme Court's decision on that issue is conclusive pursuant to Colorado state issue preclusion law, despite Plaintiffs' articulation of their claim as an individual rather than an institutional rights claim.  See <u>Block 173 Assocs.</u>, 814 P.2d at 831.  Accordingly, we find Plaintiffs' Elections Clause claim barred by issue preclusion.

## CONCLUSION

For the reasons stated above, we GRANT Defendant's motion to dismiss Plaintiffs' Elections Clause claim for relief under Art. I, § 4 of the Constitution pursuant to issue preclusion.  We DISMISS Plaintiffs' Petition Clause claim for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).

IT IS ORDERED that the Plaintiffs' Amended Complaint and cause of action are dismissed with prejudice.

**PORFILIO**, Senior Circuit Judge concurring in the result.

I believe the court has correctly concluded to dismiss this action, but because I also believe the Plaintiffs lack standing to pursue the merits of their claim, I cannot join in all the court's reasoning.  I neither need nor desire to prolong the disposition, so I shall briefly explain my premise.

The "merits" of the case presented by the Plaintiffs consist only of a claim that a constitutionally protected individual right to vote has been violated by the Colorado Supreme Court in People ex rel. Salazar v. Davidson, 79 P. 3d 1221 (Colo. 2003).  They limit this claim, however, to rights established in  Art. I, § 4 of the U.S. Constitution.  Yet, as we pointed out in Lance I and reiterated in this order, section 4 creates no individual right to vote, "independent and distinct from any 'institutional' right."  Order, p. 5.  Indeed, Plaintiffs have provided no precedential support for their assumption of such an individual right.

Yet, the law of this Circuit requires that we take care not to conflate the merits of a case with a plaintiff's standing.  In re Special Grand Jury 89-2, 450 F.3d 1159, 1172 (10th Cir. 2006) and Initiative and Referendum Inst. v. Walker, 450 F.3d 1082, 1092-97 (10th Cir. 2006) (en banc).  Indeed, this court relies upon those cases in reaching the conclusion that the Plaintiffs have standing here.

Nonetheless, neither case is apposite because the conclusion reached in both was based upon an unquestionable individual constitutional right asserted by

- 1 -

the plaintiffs: the right of free speech, and the right to propose initiated legislation, respectively.  Here, however, Plaintiffs' legally protected interest stands upon a right that is not merely contested, it simply does not exist.  See Initiative and Referendum, 450 F.3d at 1093.

Moreover, neither Special Grand Jury nor Initiative and Referendum suggests standing must be automatically conferred upon every plaintiff who asserts the violation of a First Amendment right.  We may test the premise of any First Amendment claim, albeit carefully.  See Initiative and Referendum, 450 F.3d at 1089.  Remembering how the merits of this case are circumscribed, I believe predicating dismissal on lack of standing does not cross a boundary into improper conflation.  Plaintiffs must first establish they have a right protected by section 4 before they may argue that right was aggrieved by the Colorado Supreme Court.  Because they have not, even though presented with the opportunity to do so, their action must be dismissed for lack of standing.